John L. Ketterl and Delores S. Ketterl v. commissioner. Gladys A. Ketterl v. Commissioner.
Ketterl v. Commissioner
Docket Nos. 4293-68, 5328-68.
United States Tax Court
T.C. Memo 1970-350; 1970 Tax Ct. Memo LEXIS 11; 29 T.C.M. (CCH) 1694; T.C.M. (RIA) 70350; December 24, 1970, Filed Belan M. Wagner, Santa Monica Blvd., Santa Monica, Calif., for petitioners John L. Ketterl and Delores S. Ketterl. Gladys A. Ketterl, pro se. Norman H. McNeil, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in the income taxes of petitioners John L. and Delores S. Ketterl for the calendar years 1963, 1964, 1965, and 1966 in the amounts of $550.55, $334.27, $329.18, and $226.66, respectively. *12 Petitioners claimed in their petition overpayments for the taxable years 1964, 1965, and 1966 in the respective amounts of $105, $114, and $228. Respondent determined a deficiency in the income tax of petitioner Gladys A. Ketterl for the calendar year 1966 in the amount of $216. [1]
The issues for decision are: (1) Whether John L. and Delores S. Ketterl are entitled to dependency credit exemptions for all or any of the four children of John L. Ketterl for the calendar years 1963, 1964, 1965, and 1966. (2) Whether Gladys A. Ketterl is entitled to dependency exemptions for more than two of her four children for the calendar year 1966. Findings of Fact Some of the facts have been stipulated and are found accordingly. John L. Ketterl and Delores S. Ketterl, husband and wife who resided in Santa Monica, California, *13 at the time of the filing of their petition in this case, filed joint Federal income tax returns for the calendar years 1963, 1964, 1965, and 1966 with the district director of internal revenue at Los Angeles, California. 1695 Gladys A. Ketterl who resided in Cypress, California, at the date of the filing of her petition in this case, filed an individual Federal income tax return for the calendar year 1966 with the district director of internal revenue at Los Angeles, California. John L. Ketterl was a Captain in the Air Force retired on disability during the years here in issue. He was employed by a Building and Loan Association. Gladys A. Ketterl was from May of 1963 throughout 1966 employed as a teacher. John L. Ketterl (hereinafter referred to as John) and Gladys A. Ketterl (hereinafter referred to as Gladys) were married in 1943. They had four children, Karen Lee (hereinafter referred to as Karen), John Anderson Ketterl (hereinafter referred to as John, Jr.), Susan Ann Ketterl (hereinafter referred to as Susan), and Mary Helen Ketterl (hereinafter referred to as Mary). In late 1962 John and Gladys separated and did not thereafter live together. During the years 1963, *14 1964, 1965, and 1966 all four children resided with Gladys except for certain periods when Karen and John, Jr. were away from home at school or at college. After John and Gladys separated, John filed a petition for divorce in Nevada and started making voluntary payments for the support of his children in the amount of $200 a month, which payments were made by John to his attorney in Nevada and transmitted by the attorney to Gladys. A hearing on John's petition for divorce was held in Reno, Nevada, on May 2, 1963, and on September 30, 1963, a decree of divorce was entered. After the hearing on his divorce in May 1963, John voluntarily increased support payments for his children to $250 per month. The Nevada decree fixed child support payments to be made by John at $62.50 per child per month or a total of $250 per month and made no provision for alimony to be paid to Gladys. During the year 1963 John paid a total of $2,050 to Gladys for support of the four children. There were certain periods when he did not make regular payments and subsequently these amounts were held to be arrearages and in later years John was required to pay these arrearages. John drew a check for the April 1963 *15 payment, but the check was never cashed and Gladys never received this $200. The $2,050 total payment is exclusive of this $200 which was not in fact paid. During the year 1964 John paid $3,000 for support of the four children and in addition paid $503.33 of arrearages for 1963 and interest thereon. During 1963 Gladys consulted an attorney with the idea of either attempting to have the Court not grant a divorce to John or to have the divorce granted in Nevada declared not to be legal and have provision made for support payments for the children. There was apparently some misunderstanding between Gladys and her attorney, and the attorney on January 24, 1964, filed a complaint in the Superior Court of the State of California for the County of Los Angeles to establish the Nevada decree in California. On February 25, 1964, the California Court entered an order providing for John's payment of $250 a month or $62.50 per child per month to Gladys, payable through a court trustee. It was after the entry of this order that certain moneys which had been placed in a savings account by John's attorney for payments for child support in 1963 and part of 1964 were forwarded to Gladys. By an *16 order entered June 8, 1965, the California court increased the child support payments John was to make to $70 per month per child effective July 1, 1965 and ordered John to pay medical and dental expenses. On October 20, 1965, the California court entered judgment establishing the Nevada decree in California, affirming the $70 per month per child support payments and ordering John to pay Gladys' attorneys' fees of $400 at the rate of $10 per month commencing November 5, 1965. In this judgment it was also noted that arrearages in support payments of $1,500 had been paid. On October 26, 1966, the California court ordered an increase in child support payments to $85 per month per child or $340 a month, commencing November 1, 1966. All the increases in child support payments from John were secured by action instituted by Gladys. In connection with the judgment of October 26, 1966, Gladys filed a statement which listed her regular monthly expenses. Among other items appearing on this list were $50 for transportation, $32 for "doctor and dentist health accident insurance," $35 for utilities, and $20 for "household upkeep-insurance." During the year 1965 John paid to Gladys for support *17 of the four children $3,180. In 1696 addition he made some payments on the attorneys' fees he had been ordered to pay in the 1965 judgment. During 1966 John paid to Gladys a total of $3,420 for child support payments. In addition to the payments made to Gladys for child support in 1963, John paid either as direct money gifts or for items purchased for each of the children the following amounts: Karen $48.50, John, Jr. $38.50, Susan $56.50, and Mary $38.50. In addition John paid amounts on his telephone bill which were incurred by accepting collect, long distance telephone calls at various times during 1963 from each of the children. In 1964 John made gifts of either money or items purchased to his children in the following amounts: Karen $79.50, John, Jr. $34.50, Susan $39.50, and Mary $39. In addition, during the year 1964 John accepted and paid for long distance telephone calls which were made to him by each of the children. During 1965 John gave a cash present of $35 directly to Karen. He bought a watch for John, Jr., for which he paid $25 and gave him cash of $25. He gave Susan a watch for which he paid $25 and gave her cash of $25. He gave Mary cash of $10 at one time *18 and $25 at another time, making a total of $35. In addition in 1965, John paid medical bills of $30 for Susan and Mary each. During the year 1966 John gave a cash Christmas present of $25 to each of his four children in addition to the payments he made to Gladys for their support. The following schedule shows the total amount spent by Gladys for certain household and incidental expenses for herself and the four children during the years 1963, 1964, 1965, and 1966: Item
1963
1964
1965
1966
Food
$1,000
$1,950
$2,150
$2,020
House rent
2,195
2,400
2,400
2,400
Utilities
243
553
570
560
Clothing
200
696
1,162
1,654
Medical and dental
220
188
560
397
Children's allowances
96
366
386
386
Charity
27
80
234
124
Moving
447 These expenses, except for clothing and medical and dental expenses, were made for the entire household of Gladys and the four children. For 1964 through 1966 the food expense included cost of food for Karen at college and for 1966 also included cost of John, Jr.'s food at college. Gladys owned furniture which had been acquired by her and John somewhere around the mid-1950's. She moved this furniture *19 to the Los Angeles area in 1963 from San Francisco where she had lived prior to her separation from John and until the end of April of 1963. Gladys and the family used this furniture in their living quarters. Gladys and the family also incurred certain transportation expenses which consisted of the cost of operating one automobile for the use of the whole family. Also, Gladys incurred on behalf of the whole family miscellaneous household expenses which consisted of the purchase of such items as bed linens, repair of the television or furniture and similar type items. The television set which Gladys had among the furnishings which she moved from San Francisco was a 1948 black and white set and she would spend money on repairing it. She included the money so spent under miscellaneous household expenses along with similar furniture repair items. Gladys also paid certain educational expenses on behalf of herself and the children. In 1964 Karen went away to college. She attended Stout State University in Menominie, Wisconsin. She incurred certain travel expenses when she went to college and when she came home for the summer and for Christmas and Easter vacations. She also had certain *20 expenses for room and food while at college, as well as tuition, books, and similar expenses. John, Jr. went away to the University of Arizona in the fall of 1966 and he incurred certain similar expenses. From the beginning of 1963 until the middle of March 1966 Gladys together with her four children lived in rented unfurnished apartments or houses. In 1966 Gladys purchased a condominium for a total amount of $22,300. She made a small downpayment and the balance was paid from the proceeds of a first mortgage on the property. The payments on the first mortgage 1697 and other expenses in connection with the condominium were between $150 to $160 per month. The fair rental value of the condominium unfurnished was $200 per month. During all of the years here in issue the fair rental value of the furniture used by Gladys and the children in their unfurnished quarters was $200 per year. During the years here in issue transportation costs for Gladys and the children were $600 per year excluding the cost of travel for Karen and John, Jr. to their respective colleges. Miscellaneous household expenses for Gladys and the children were $130 for 1963, $207 for 1964, $100 for 1965 and $200 *21 for 1966. Educational expenses for each of the four children in 1963 were $15. In 1964 educational expenses for John, Jr., Susan and Mary were $35 each. For the school year 1964-65 Karen received educational assistance from the Air Force Aid Society of $850. Three hundred and fifty dollars of this amount was an outright grant and $500 was a non-interest-bearing loan payable after graduation. Karen was the primary obligor on the $500 loan and Gladys signed as guarantor. During 1965-66 Karen received similar assistance, but for this year the total amount was $1,000, $500 in the form of a grant, and $500 in a loan on which Karen was the primary obligor. For the school year 1966-67 Karen received from the Air Force Aid Society similar assistance of $1,450 of which $725 was a grant and $725 a loan on which Karen was the primary obligor. For the school year 1966-67 John, Jr. received from the Air Force Aid Society assistance of $700, $500 in a loan on which he was the primary obligor and $200 as an outright grant. In addition, John, Jr. received $1,000 as a loan under the National Defense Act of 1958. This amount was paid directly to the college for John, Jr.'s expenses and John, Jr. was *22 the primary obligor on the loan. Karen's educational expenses for the year 1964 excluding the outright grant but including the amount she received under the loan were $874. Her educational expenses for 1965 excluding the grant but including the $500 loan were $1,000, and the educational expenses for this year for each of the other children were $100. In 1966 Karen's educational expenses including her room rent were $868 which amount excluded the direct grant to Karen but did not exclude the loan she obtained. During 1966 John, Jr. had a cost of $500 for his room at college and $500 for other educational expenses. This $1,000 amount was incurred in addition to the direct grant which he received but did not exclude the $500 loan from the Air Force Aid Society or whatever portion of the $1,000 National Defense loan was applied towards his expenses for the first semester of 1966. During 1966 Gladys paid educational expenses for Susan of $100 and for Mary of $60. At the time of trial Gladys had not been called upon to repay and had made no payments on any of the educational loans made to Karen or John, Jr. Gladys maintained a room for Karen while she was away at college for her to use *23 during the summer and at Christmas and Easter vacations and similarly maintained a room for John, Jr., when he was away. On the basis of distributing the fair rental value of housing and furniture equally to Gladys and each of the four children, allocating utilities on the basis allocated by Gladys, and making an allocation of transportatio on the basis of a lesser portion of the transportation by the family car being for John, Jr. and Karen when they were away but including cost of transportation to attend college as part of their support, we have arrived, by considering all of the evidence herein, at the following amounts of total support paid for each of the children including in such support the amounts given by John to the children as cash and the value of gifts given them by John: *10 Total support for
,year
Karen
John, Jr.
Susan
Mary
1963
$1,135
$1,231
$1,125
$1,104
1964
[1] 2,645
1,492
1,513
1,487
1965
[1] 3,242
1,931
1,822
1,892
1966
[1] 2,501
[2] 2,671
1,742
1,692
*24 John and Delores on their joint income tax return for 1963 claimed a dependency exemption for each of John's four children. On their 1964 joint income tax return they claimed a dependency exemption for John, Jr., Susan, and Mary, making a total of three such dependency exemptions. On their 1965 joint income tax return they again claimed three dependency exemptions for John's children, John, Jr., Susan, and Mary, and on their 1966 joint income tax 1698 return claimed two dependency exemptions for John's children, Susan and Mary. In their petition to this Court, John and Delores alleged that for each of the years 1963 through 1966 they are entitled to a dependency exemption for each of the four children. For each of the years 1963 through 1966 Gladys claimed dependency exemptions for all four of her children. For the years 1963 and 1964 she listed the children's names on the separate schedule of exemptions either in an original or amended return and stated that none of the children had income of his own, that she had furnished all of the support and under the heading of amount furnished by others showed "none". For the year 1965 on the separate schedule of exemptions she listed *25 Karen, stating that Karen lived with her 12 months during the year, that she did not have income of $600 or more, that she had furnished all of Karen's support, and that none of Karen's support had been furnished by others. Respondent in his notice of deficiency to John and Delores disallowed all the deductions which they had claimed for dependency exemptions for John's children for each of the years 1963, 1964, 1965, and 1966. For the year 1966 respondent mailed a short form notice to Gladys. However, the parties have stipulated that in this notice respondent disallowed Gladys' claimed dependency exemptions for only Susan and Mary. Ultimate Findings of Fact 1. For the calendar year 1963, John furnished over one-half of the support for Susan and Mary but has failed to establish that he furnished over one-half the support for Karen and John, Jr. 2. For the calendar year 1964 John furnished over one-half the support for John, Jr., Susan, and Mary but has failed to establish that he furnished over one-half of the support of Karen. 3. For the calendar year 1965 John has failed to establish that he furnished over one-half of the support of any one of his four children. 4. *26 For the calendar year 1966 John furnished over one-half of the support for Susan and over one-half of the support for Mary but has failed to establish that he furnished over one-half of the support for Karen and John, Jr. 5. For the calendar year 1966 Gladys has failed to establish that she furnished over one-half of the support for any of her four children. Opinion The issue here is factual. We have set forth the facts in some detail. We were confronted with either relying to a large extent on estimates by Gladys or concluding that the record did not show the total support of the children. There is much of a contradictory nature in Glady's testimony. For example, on her schedule of cost of support she refers to Karen and John, Jr. being employed in the summer but in no way accounts for the expenditure of their earnings. Also, Gladys stated that all furnished apartments rented for $500 a year more than unfurnished apartments without considering the type of furnishings. She estimated the rental value of her condominium at $300 a month without stating any basis for the estimate. On her tax returns she stated she paid "all" the support of the children and that "none" was paid by *27 anyone else. She claimed that the loans received by Karen and John, Jr. were support furnished by her even though she was merely a guarantor of the notes of her children and had not been called upon to make any payments on these notes. However, we have used our best judgment to determine the total cost of support of each of the children in each year here in issue from all the evidence. We have made the best determination that we can from the description of the furniture used by Gladys and the children as to its fair rental value [2] and have determined transportation costs from a consideration of all the evidence. The record shows that in 1963 until the time of the divorce Gladys charged gasoline to John's credit card. It seems unreasonable that she would have had the cost she claimed for transportation exclusive of these charges in that year. Also the primary use of the 1699 automobile was from all the evidence for Gladys' commuting. *28 For miscellaneous household expenses it is apparent that Gladys included purchase of items which were part of the furnishings and apparently replaced similar items which she sold. From the evidence of record we have determined the amount of miscellaneous household expenses as best we could. We have used educational expenses as set forth by Gladys but have noted that substantial protions of Karen's expenses in 1964, 1965, and 1966 were paid by Karen, herself, through loans on which she was the primary obligor and that the same is true of John, Jr.'s expenses in 1966. We have eliminated the portion of the expenses of Karen and John, Jr., paid by grant. [3]
*29 The only item claimed by Gladys to be a support expense which we have entirely excluded is an item of attorneys' fees which Gladys claimed were paid to get child support money for the children. From reading the various documents in the record and considering statements made by Gladys with respect to her trip in 1963 to Reno, it is apparent that some if not all of these fees were in connection with an attempt to keep John from obtaining a divorce or for having the Nevada divorce he obtained held invalid. At least this record does not substantiate that these attorneys' fees were paid primarily to obtain increases in child support payments. For 1964 we have considered that Karen furnished $500 of her own support from the proceeds of her loan and that of the remaining $2,145 John furnished $837 and Gladys $1,308. Money borrowed by a college student on his own note is support furnished by the student himself. The record is clear that Gladys has not paid or been called upon to pay any amount on any of the educational loans which Karen and John, Jr. obtained. For the calendar year 1965 Karen also had a $500 loan with which she paid part of her own educational expenses. For this year it *30 is apparent from the amount of total support we have found for each of the children that John did not pay over one-half of the support of any of the children. For the years 1963 and 1966 the record shows that John paid over one-half of the support for Susan and Mary. In so holding we have considered all of the payments made by John in the year 1963 to be for child support. This was John's testimony and Gladys did not deny this statement of John's. For the year 1966 of Karen's total support of $2,501, $725 was paid by Karen herself by her educational loan and the remainder was paid $880 by John and $896 by Gladys. It is, therefore, apparent that neither John nor Gladys paid over one-half of Karen's support in 1966. It is likewise apparent that neither John nor Gladys paid over one-half of John, Jr.'s support in 1966 after considering the payment made by John, Jr., himself, from the Air Force Aid Society loan on which he was the primary obligor. Also, it is not clear as to how much of John, Jr.'s support was paid by his loan under the National Defense Act. However, respondent only disallowed the exemptions claimed by Gladys for the year 1966 for Susan and Mary and he has made no *31 affirmative allegation claiming an increased deficiency in Gladys' tax for 1966. We have held that John has shown that he paid over one-half of the support of Susan and Mary for the year 1966 and it follows that we sustain respondent's disallowance of the dependency exemptions claimed by Gladys in 1966 for Susan and Mary. Decisions will be entered under Rule 50. 1700 Footnotes
1. For the years 1963, 1964, and 1965, Gladys A. Ketterl claimed four dependency exemptions which were disallowed by respondent but no petition was filed with this Court. The amount of deficiencies determined was collected by respondent and Gladys A. Ketterl has filed claims for refund for the deficiencies paid, which claims have not been acted on by respondent.↩
1. This amount includes the loans which Karen agreed to repay to the Air Force Aid Society but does not include the amount of the grant. ↩
2. This amount includes the amount of the Air Force Aid Society loan to John, Jr., and the National Defense loan to John, Jr. but does not include the amount of the Air Force Aid Society grant to John, Jr.↩
2. Respondent's regulations specifically provide in this respect: Sec. 1.152-1(a)(2)(i), Income Tax Regs.
(2)(i) * * * Generally, the amount of an item of support will be the amount of expense incurred by the one furnishing such item. If the item of support furnished an individual is in the form of property or lodging, it will be necessary to measure the amount of such item of support in terms of its fair market value.↩
3. Respondent's regulations provide in this respect: Sec. 1.152-1(c), Income Tax Regs.
(c) In the case of a child of the taxpayer who is under 19 or who is a student, the taxpayer may claim the dependency exemption for such child provided he has furnished more than one-half of the support of such child for the calendar year in which the taxable year of the taxpayer begins, even though the income of the child for such calendar year may be $600 or more. In such a case, there may be two exemptions claimed for the child: One on the parent's (or stepparent's) return, and one on the child's return. In determining whether the taxpayer does in fact furnish more than one-half of the support of an individual who is a child, as defined in paragraph (a) of Sec. 1.151-3, of the taxpayer and who is a student, as defined in paragraph (b) of Sec. 1.151-3, a special rule regarding scholarships applies. Amounts received as scholarships, as defined in paragraph (a) of Sec. 1.117-3, for study at an educational institution shall not be considered in determining whether the taxpayer furnishes more than one-half the support of such individual. For example, A has a child who receives a $1,000 scholarship to the X college for one year, A contributes $500, which constitutes the balance of the child's support for that year. A may claim the child as a dependent, as the $1,000 scholarship is not counted in determining the support of the child. * * *↩